IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | Case No. 1:11-CR-63-1 |
| Plaintiff, : | |
| : | Chief Judge Susan J. Dlott |
| v. : | |
| : | ORDER DENYING |
| PHILLIP AYERS, : | DEFENDANT'S MOTION TO |
| : | WITHDRAW GUILTY PLEAS |
| Defendant. : | |

This matter comes before the Court on Defendant Phillip Ayers' Motion to Withdraw Guilty Pleas. (Doc. 96.) Ayers alleges that due to ineffective assistance of counsel, he pled guilty to a charge of unlawful possession of firearms in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1), without fully understanding the nature of the charge and the elements of the offense. The Court held a hearing on Defendant's motion on December 19, 2012, during which Ayers testified on his own behalf. After careful consideration of the parties' arguments and of the record, the Court **DENIES** Defendant's motion.

I.     BACKGROUND

Following a months-long investigation into Defendant's suspected role in trafficking heroin, Defendant was arrested on March 18, 2011 when officers stopped his vehicle and discovered that his passenger and Co-Defendant, Wesley Showes, was in possession of more than 100 grams of heroin.[1] During the investigation, officers learned that Ayers occasionally stayed at a residence on Creekview Drive in Cincinnati, Ohio, and officers had observed Ayers

---

[1] The circumstances of that arrest were discussed in detail in this Court's October 25, 2011 Order Denying Defendants' Motions to Suppress Evidence. (Doc. 30.)

coming and going from that residence. After Ayers' arrest, officers obtained search warrants for several locations associated with Ayers, including the Creekview Drive residence. During a search of that residence, officers recovered two firearms (a Smith & Wesson .40 caliber pistol and a M-11 9mm pistol), a money counter, scales, drug grinders with drug residue, a food saver, and personal papers belonging to Ayers, including an electric bill.

On or about May 18, 2011, a federal grand jury indicted Ayers with conspiracy to possess with intent to distribute a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1); possession with intent to distribute a Schedule I controlled substance (more than 100 grams of heroin), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2 (Count 2); possession with intent to distribute a Schedule I controlled substance (a measurable amount of heroin), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2 (Count 3); unlawful possession of firearms in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (Count 5); and unlawful possession of firearms by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 6).[2]

Following his indictment, Ayers filed a Motion to Suppress Evidence in which he challenged the March 18, 2011 vehicle stop and search that resulted in his arrest. (Doc. 22.) The Court denied that motion on October 25, 2011. (Doc. 30.) Shortly thereafter, Ayers entered into plea negotiations with the Government. A plea agreement and statement of facts, both signed by

---

[2] Ayers was not charged under Count 4 of the Indictment, which charged his Co-Defendants with possession with intent to distribute heroin.

Ayers, were filed on December 12, 2011, and on the following day, the Court held a change of plea hearing at which Ayers pleaded guilty to Counts 2 and 5 of the Indictment.[3]

The last paragraph of the signed statement of facts attached to Ayers' plea agreement states as follows:

> A search of Ayers['] residence recovered a Cobray SWD, model M-11, 9mm semi-automatic pistol serial number 89-0051390, loaded with thirty three rounds of ammunition and the Smith & Wesson, model SW40VE, .40 caliber, semi-automatic handgun, serial number DTE7781, loaded with thirteen rounds of ammunition. The weapons were possessed as a means of protection of the house and contents and were thus in furtherance of the drug trafficking operation conducted by Ayers.

(Doc. 47 at 7, Page ID # 145.) Roughly a year after signing that statement of facts, Ayers testified at the December 19, 2012 hearing on his motion to withdraw his guilty pleas that though the statement had identified the Creekview Drive residence as "Ayers['] residence," he actually had lived at a different address during the months prior to his arrest. He admitted that a friend of his lived at the Creekview Drive residence and that he had a key to the residence which he used to visit his friend two or three times a week. However, he claimed that until his arrest, he had been unaware of the firearms found at that residence. He further testified that the firearms were not his and that they were registered to his friend, a fact he claims he told his former attorney, Richard Goldberg,[4] prior to entering into the plea agreement. Additionally, though he admitted that tools of the drug trade were found in that house, he maintained that no one sold drugs at that location.

---

[3] Ayers' plea agreement and statement of facts may be found at CM/ECF Doc. 47, and the transcript of the change of plea hearing was filed as Doc. 95.

[4] As discussed below, Goldberg represented Ayers from the beginning of this case through the change of plea hearing until he was permitted to withdraw in October 2012.

Ayers testified that he was not shown the plea agreement or statement of facts until the day that he signed them. He also testified that prior to that date, he and Goldberg had discussed the facts of the case only at a minimum. Ayers admitted that Goldberg read the statement of facts to him before he accepted the agreement, but he testified that he did not completely understand the statement about the weapons. When he expressed concern, Goldberg allegedly told him not to worry because any sentence on the gun charge would run concurrent to the sentence on the drug charge.[5] Ayers further alleged that Goldberg never fully explained the factual basis for the firearms charge, and he claimed that when he told Goldberg that the weapons were not his, Goldberg indicated that his possession of a key to the Creekview Drive residence was enough evidence to link him to the weapons.

Ayers' recent testimony paints a different picture than the one presented at his December 13, 2011 change of plea hearing. During that hearing, Ayers expressed no reservations or concerns about his plea agreement or statement of facts, though he had several opportunities to do so. Pursuant to the Court's general practice, the Court placed Ayers under oath and asked him a number of questions to ensure that his change of plea was made voluntarily and with a full understanding of the nature of the charges and the consequences of entering a guilty plea. (*See* Doc. 95 at 6–16, Page ID # 247–57.) While under oath, Ayers affirmed that he understood the charges against him, that he believed his attorney to be fully informed about the facts and circumstances upon which those charges were based, and that he was "fully satisfied with the counsel, representation, and advice given to [him] in this case by [his] attorney." (*Id*. at 8, Page

---

[5] As discussed below, this was not accurate; however, the Court explained to Ayers during the change of plea hearing that the sentences imposed on the two charges would be consecutive rather than concurrent.

4

ID # 249.)  The Court advised Ayers of the consequences of pleading guilty and of the penalties to which he could be subject, including the fact that the minimum sentences that applied to Counts 2 and 5 would have to be served consecutively.  (*Id*. at 8–16, Page ID # 249–57.)  The essential terms of Ayers' plea agreement were summarized for the record, and Ayers confirmed that he had an opportunity to read and discuss the agreement with his attorney prior to signing it.  (*Id*. at 16–20, Page ID # 257–61.)  He further confirmed that he understood the terms of the agreement and that no one had made any promise or assurance not contained in the agreement in order to persuade his consent.  (*Id*. at 20–21, Page ID # 261–62.)

After verifying that Ayers had entered into the plea agreement voluntarily and with a full understanding of its terms, the Court asked the Government to recite the elements of each of the charges to which Ayers was pleading guilty.  As to the weapons charge, the elements of the offense were described as follows: "the elements of possession of a firearm in furtherance of a drug trafficking offense are that he possessed a firearm in furtherance of a drug trafficking offense and that the — the aforementioned acts occurred in the Southern District of Ohio."  (*Id*. at 22, Page ID # 263.)  Ayers agreed that he was guilty of each of those elements.  (*Id*.)  A Drug Enforcement Administration ("DEA") Task Force Agent then read the statement of facts, including the paragraph regarding the weapons found at the Creekview Drive residence, and Ayers confirmed that the statement was correct.  (*Id*. at 23–24, Page ID # 264–65.)

Following Ayers' change of plea hearing, the Court ordered a pre-sentence investigation, and the presentence report was completed on February 23, 2012.  The Court set a sentencing hearing for June 26, 2012.  On June 1, 2012, the Government filed a sentencing memorandum recommending a total of 130 months.  (Doc. 71.)  Three days later, on June 4, 2012, Ayers filed

a motion to continue the sentencing hearing. (Doc. 72.) The Court granted that motion and continued the hearing to September 6, 2012. The hearing then was continued a second time to November 14, 2012.

On October 5, 2012, this Court received a letter from Ayers dated October 3, 2012, in which Ayers requested permission to withdraw his plea of guilty with regard to Count 5, the 18 U.S.C. § 924(c)(1) charge. Ayers claimed that he had recently gained access to a law library and had begun researching cases related to § 924(c). He alleged that Goldberg had not fully explained the nature of the weapons charge and that he believed it was merely a sentencing enhancement. After researching the facts needed to support a conviction under § 924(c), Ayers did not believe there was sufficient evidence to support such a charge.

On October 11, 2012, shortly after receipt of Ayers' letter, Goldberg filed a motion to withdraw as counsel for Ayers, citing a total breakdown of the attorney-client relationship. (Doc. 89.) The Court granted Goldberg's motion on October 15, 2012 and appointed new counsel, Peter Rosenwald, shortly thereafter. On November 27, 2012, Rosenwald filed Ayers' Motion to Withdraw Guilty Pleas, in which he reiterated the request made in Ayers' letter.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 11(d)(2)(B) permits a defendant to withdraw a plea of guilty after the court accepts the plea, but before it imposes sentence, if "the defendant can show a fair and just reason for requesting the withdrawal." The standard for withdrawal of a plea within the Sixth Circuit is well-settled:

> . . . A defendant does not have an absolute right to withdraw a guilty plea and bears the burden of proving that he is entitled to withdraw his guilty plea. When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a

6

> guilty plea should seldom arise. The withdrawal of a guilty plea is inherently in derogation of the public interest in finality and the orderly administration of justice.
>
> . . . [Federal Rule of Criminal Procedure 11(d)(2)(B)] is designed to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty. Withdrawal of a plea is appropriate where there is a real confusion or misunderstanding of the terms of the agreement.

*United States v. Ellis*, 470 F.3d 275, 280–81 (6th Cir. 2006) (internal citations and quotations omitted).

In determining whether a defendant has met the Rule 11(d)(2)(B) standard in articulating a reason for withdrawal of the guilty plea, the Court considers a number of factors including but not limited to the following, hereinafter referred to as the "*Bashara* factors":

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007) (citing *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded by statute on other grounds as stated in United States v. Caseslorente*, 220 F.3d 727, 734–35 (6th Cir. 2000)); *see also United States v. Sharp*, No. 09–4267, 2011 WL 2035905, at *9 (6th Cir. May 25, 2011). No one factor is controlling. *Ellis*, 470 F.3d at 286. Ultimately, "[t]he permission to withdraw a guilty plea prior to sentencing is a matter within the broad discretion of the district court." *United States v. Valdez*, 362 F.3d 903, 912 (6th Cir. 2004) (citing *United States v. Goldberg*, 862 F.2d 101, 103 (6th Cir. 1988)).

## III. ANALYSIS

Though Ayers moves to withdraw both of his guilty pleas, his primary concern is with the 18 U.S.C. § 924(c)(1) charge (Count 5). Ayers claims that, due in large part to alleged ineffective assistance of counsel, he did not enter his guilty plea to that charge in a knowing, intelligent, or voluntary manner and that the Government failed to advance a sufficient factual basis for his plea. Ayers neither alleges nor has shown any reason why he should be permitted to withdraw his plea as to Count 2. Accordingly, using the *Bashara* factors as a guide, the Court considers only whether Ayers has shown a fair and just reason for requesting to withdraw his plea as to Count 5.

### A. Amount of Time Between the Plea and the Motion to Withdraw and Defendant's Reason for the Delay

With regard to the first factor, the amount of time that elapsed between the guilty plea and the motion to withdraw, the Sixth Circuit has stated that "'[t]he shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reason for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time.'" *Ellis*, 470 F.3d at 286 (quoting *United States v. Baez*, 87 F.3d 805, 808 (6th Cir.1996)). In this case, Ayers entered his guilty pleas on December 13, 2011, and he did not move to withdraw those pleas until October 2012. Courts have denied motions to withdraw guilty pleas in cases with shorter periods of delay. *See United States v. Durham*, 178 F.3d 796, 798-99 (6th Cir. 1999) ("The strongest factor supporting the district court's denial of Durham's motion is the length of time between Durham's plea and the filing of his motion to withdraw. Durham waited approximately seventy-seven days to file his motion after entering his guilty plea."); *Baez*, 87

8

F.3d at 808 (sixty-seven days); *Goldberg*, 862 F.2d at 104 (fifty-five days); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (thirty-five days).

As to the second factor, Ayers advances a plausible explanation for the delay in that he alleges that it was not until July 26, 2012, when he was moved to a detention facility where he had regular access to a law library, that he was able to research the law pertaining to 18 U.S.C. § 924. Ayers maintains that he did not realize his mistake in pleading guilty to the § 924(c) charge until he began to research that charge. He further claims that he told Goldberg he wished to withdraw his plea as early as August 2012. Ayers' explanation for why it took him nearly a year to request to withdraw his pleas is credible and therefore mitigates the length of the delay, such that the delay does not in this case weigh heavily against Ayers' request.

**B.      The Extent of Defendant's Assertions of Innocence**

Turning to the third factor, the Court considers the extent to which Ayers has maintained his innocence or admitted guilt during the duration of the proceedings. As indicated above, by signing the statement of facts attached to his plea agreement and by further acknowledging those facts during his change of plea hearing, Ayers admitted to possessing firearms in furtherance of the drug activity to which he was pleading guilty. Ayers also at least implicitly admitted to having lived at the Creekview Drive residence by failing to object to the description of that dwelling as "Ayers['] residence." (*See* Doc. 47 at 7, Page ID # 145.) Ayers claims he repeatedly told Goldberg that he did not "own" the weapons, and that the weapons were not registered to him, but those facts are not dispositive of the issue of possession. It was not until after Ayers began researching 18 U.S.C. § 924 that he began to minimize his connection with the Creekview Drive residence or to claim ignorance of the very existence of the weapons prior to his arrest.

9

During his change of plea hearing, Ayers had ample opportunity to object to the statement of facts or to clarify any statement he believed to be untrue or misleading, but he gave no indication that he either disagreed with or did not fully understand the facts that he admitted to or the crimes to which he pled. The third *Bashara* factor therefore weighs against Ayers' request to withdraw his plea.

C. **The Circumstances Underlying the Entry of Defendant's Guilty Plea**

The crux of Ayers' motion centers on the circumstances surrounding the entry of his guilty plea. Ayers alleges that Goldberg either did not fully understand or did not explain to Ayers the facts the Government would be required to prove in order to prevail on Count 5, specifically the requirement that the Government demonstrate that the firearm or firearms in question were possessed for the purpose of advancing or promoting the commission of the underlying drug offense. Ayers suggests that had he been aware of that requirement, he would not have pled guilty to Count 5 because he does not believe the evidence in this case would demonstrate a nexus between the firearms and the drug offense to which he plead guilty.[6] Accordingly, Ayers claims that due to ineffective assistance of counsel he did not enter his guilty plea in a knowing, intelligent, and voluntary manner.

---

[6] Though not raised in his motion to withdraw his pleas, Ayers indicated during the hearing on that motion that Goldberg also erroneously advised him that any prison sentence on Count 5 would run concurrently with the sentence to Count 2. To the extent that Ayers went into his change of plea hearing with that assumption, this Court's exchange with him during his plea colloquy should have disabused him of that notion. The Court expressly advised Ayers that a minimum sentence applied to each count and that those sentences would run *consecutively*. (Doc. 95 at 9, Page ID # 250 (emphasis added).) Ayers was asked at least twice if he understood the potential penalties he faced, and both times he answered in the affirmative. He did not once express any doubt or ask the Court for further explanation.

In general, to establish an ineffective assistance of counsel claim, a defendant must show both that counsel's "performance was deficient," which the Supreme Court has defined to mean that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that counsel's "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As applied to Ayers' challenge to his guilty plea, the *Strickland* test requires that Ayers demonstrate that (1) his attorney's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for his attorney's unprofessional errors, Ayers would not have pleaded guilty to the charge in question. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

Ayers compares the instant case to *United States v. Maye*, 582 F.3d 622, 626–31 (2009), in which the Sixth Circuit vacated the defendant's conviction under 18 U.S.C. § 924(c) after finding that: (1) the government failed to provide the necessary factual basis for the defendant's guilty plea to the § 924(c) charge; and (2) the district court erroneously believed that evidence that a gun was present on premises where a drug sale occurred was sufficient to support a conviction under § 924(c).[7] Like the defendant in *Maye*, Ayers alleges that there is insufficient evidence in this case to support a conviction under § 924(c), that his attorney incorrectly informed him that possession of the weapons discovered at the Creekview Drive residence was sufficient to support that charge, and that this Court failed to carry out its duty to determine

---

[7] In *Maye*, the Sixth Circuit reiterated that "the mere possession of a firearm on the same premises as a drug transaction is insufficient to support a section 924(c) conviction;" rather, there must be evidence that "'the firearm [was] strategically located so that it is quickly and easily available for use.'" 582 F.3d at 626 (quoting *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001)). In other words, "coincidental presence of a firearm in the vicinity of a crime is insufficient to support a section 924(c) conviction." *Id*. at 630.

11

whether there was a factual basis for Ayers' plea of guilty to Count 5. *See* Fed. R. Crim. Proc. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."). There are, however, significant differences between *Maye* and the instant case, the most important of which is that there was evidence in the record that both Maye's attorney and the district court consistently expressed a mistaken understanding of what was required to establish that a firearm was possessed in furtherance of a drug trafficking crime. For example, during his sentencing, Maye repeatedly expressed confusion as to whether his constructive possession of the firearm alone at the time of the drug-trafficking offense was sufficient to support the § 924(c) charge. *See id.* at 627–31. In response, the district court made several statements indicating that mere possession was sufficient. *Id*. It was that exchange that convinced the Sixth Circuit "beyond any doubt that Maye would not have entered the guilty plea to the firearms charge if he had thought that something more than mere possession of a weapon on the premises was necessary to establish his guilt." *Id*. at 630.

As the record stands in this case, there is nothing to suggest that either Ayers' attorney or this Court misrepresented the requirements of a § 924(c) charge, other than Ayers' recent conclusory testimony, offered in support of his motion to withdraw his pleas, that he did not understand the basis for that charge and that Goldberg never explained the elements to him. Nor does the record indicate the lack of a factual basis for the § 924(c) charge. Ayers claims the Government failed to establish a nexus between the guns seized at the Creekview Drive residence and the drug charge to which he pled guilty, emphasizing the fact that he was not arrested at that residence and that no drugs were found at the residence. However, the fact that drug paraphernalia including scales and packaging materials were found at that location at least

suggests that drugs had been and would in the future be stored and packaged for sale there. More importantly, as indicated above, Ayers admitted during his change of plea hearing that he possessed the weapons seized from the Creekview Drive residence "as a *means of protection of the house and contents* and . . . in *furtherance* of the drug trafficking operation" he conducted. (Doc. 47 at 7, Page ID # 145 (emphasis added).) Ayers never expressed confusion as to what that statement meant. Nor did he ask for further clarification of the elements of a § 924(c) charge.

In light of the record that exists at this time, this Court is not in a position to find that Goldberg's representation of Ayers was deficient or that Ayers would not have pled guilty to the § 924(c) charge had he been given different representation. There are many factors that may have gone into Goldberg's decision to advise Ayers to accept the plea agreement presented by the Government in this case, and Ayers has not shown that Goldberg gave that advice based on a misunderstanding of the law. Accordingly, there is little if any basis for this court to conclude that the circumstances underlying the entry of Ayers' plea justify allowing Ayers to withdraw that plea.

### D. Defendant's Background and Prior Criminal Experience

Ayers admits that his extensive criminal history and prior experience with the criminal justice system weigh against his request, and he has not identified any aspects of his background that would cause this Court to give greater credence to his claim that he did not enter into his plea in a knowing, intelligent, and voluntary manner.

### E. Potential Prejudice to the Government

The final *Bashara* factor addresses the potential prejudice to the Government that may result from allowing Ayers to withdraw his plea. The Court need not actually consider that factor "unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal." *Spencer*, 836 F.2d at 240. As discussed above, Ayers has not shown just cause for the withdrawal of his guilty pleas. With the overwhelming majority of the *Bashara* factors weighing against Ayers, there is no need for the Government to demonstrate prejudice.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Ayers' Motion to Withdraw Guilty Pleas. (Doc. 96.)

IT IS SO ORDERED.

                                                   ___s/Susan J. Dlott_____
                                                   Chief Judge Susan J. Dlott
                                                   United States District Court